# EXHIBIT 1

FILED
6/24/2025 2:53 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L008063
Calendar, R
33284850

FILED DATE: 6/24/2025 2:53 PM 2025L008063

03013  NN/slp
*pleadings@benshaplaw.com*

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JOSHUA CHURCHIA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2025L008063 |
| THE PROCTER AND GAMBLE COMPANY d/b/a OLD SPICE, PROCTER & GAMBLE DISTRIBUTING LLC, THE PROCTER & GAMBLE MANUFACTURING COMPANY, THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY, ARZUQ DISTRIBUTORS INC., and AMAZON.COM INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

## COMPLAINT

NOW COMES, plaintiff through counsel, and complains of defendants as follows:

1. At all times relevant, plaintiff was a resident of Chicago, IL.

2. On June 25, 2023, plaintiff purchased "Old Spice Wilderness with Lavender" deodorant (the "Deodorant") through Amazon.com order number 113-2050091-3561834.

3. The order was "sold by" and "supplied by" a seller identified as "Arzuq Grocers and More" on the Amazon receipt.

4. On information and belief, Arzuq Distributors Inc. owns, operates, manages, and/or does business as Arzuq Grocers and More.

5. Defendant the Procter and Gamble Company and its subsidiaries and sham alter egos developed, designed, manufactured, marketed, and sold the Deodorant jointly and severally and each of them.

6. P&G's Old Spice deodorant products have caused adverse health effects including, but not limited to: severe burning, rashes, irritation, scarring, discoloration, scabbing, peeling skin and/or other injury.

7. P&G and its subsidiaries are responsible for placing old spice deodorant into the stream of commerce.

8. Old Spice deodorant products are defective. They contain a mix of chemicals that, when applied to the skin, produce a significant risk of injury. Consumers like plaintiff have reported acute skin injuries – such as rashes, redness, blisters, aches, and burns – from using Old Spice deodorants.

9. P&G's executives and employees are aware of Old Spice deodorants' propensity to harm the skin. Despite such awareness, P&G does not warn of Old Spice deodorants' propensity to harm the skin, in labeling these products or otherwise. P&G has not issued a product recall or completed an investigation to determine the root cause of the reported injuries from use of Old Spice deodorants.

10. On all Old Spice deodorants, P&G directs users to "[a]pply [the product] to underarms only." The deodorants also state that the consumer should "[s]top use if rash or irritation occurs." This language commonly appears on other deodorant and skin-care product labels. Other than this language, Old Spice deodorants provide no warning of risks associated with their use. Neither on the Old Spice deodorant

packaging itself, nor anywhere else, does P&G disclose Old Spice deodorants' propensity to cause skin injuries.

11. Deodorants are typically applied to the skin, principally in the underarm region, to minimize or prevent body odor. P&G manufactures, markets, and sells Old Spice deodorants to help consumers "keep their mansmells under control." On all Old Spice deodorants, P&G directs users to "[a]pply [the product] to underarms only." The deodorants also state that the consumer should "[s]top use if rash or irritation occurs." This language commonly appears on other deodorant and skin-care product labels. Other than this language, Old Spice deodorants provide no warning of risks associated with their use. Neither on the Old Spice deodorant packaging itself, nor anywhere else, does P&G disclose Old Spice deodorants' propensity to cause skin injuries.

12. Old Spice deodorants contain a mix of chemicals that produce a significant risk of injury when applied to the skin. The skin injuries resulting from use of Old Spice deodorant are acute forms of contact dermatitis.

13. Ordinary consumers reasonably expect products like Old Spice deodorants to bear appropriate warnings should use of the products pose a significant risk. The absence of such warnings on Old Spice deodorants misleads consumers into believing that these products are safe to use and will not result in injuries.

14. Old Spice deodorants' propensity to cause skin injuries is material to a reasonable consumer. Knowledge of Old Spice deodorants' propensity to cause skin

3

FILED DATE: 6/24/2025 2:53 PM    2025L008063

injuries would cause a reasonable consumer to avoid purchasing Old Spice deodorants.

15. P&G markets its lavender deodorant as "aluminum-free deodorant that's gentle on skin." In reality, lavender oil is well-known to form strong contact allergens on air exposure because it lacks natural protection against autoxidation.

16. Plaintiff suffered chemical burns or contact dermatitis that is non-allergenic. Even if allergenic, defendants failed to warn of the well-known risk of lavender oil used in its deodorants.

17. The Deodorant contained a high fragrance allergen load.

18. The Deodorant contained Linalool, ethyl linalool, limonene, citronellol, geraniol, isoeugenol, hydroxycitronellal, hexyl cinnamal, lavender oil, cyclamen aldehyde, methylenedioxyphenyl methylpropanal (Lyral).

19. Lyral is banned in cosmetic products sold in the Europeon Union, in part, because of its sensitization risk.

20. Lyral poses sensitization risk.

21. Linalool, ethyl linalool, limonene, and lavender oil all oxidize to form hydroperoxides.

22. Octadecyl di-t-butyl-4-hydroxyhydrocinnamate does not prevent oxidization of linalool, ethlyl linalool, or limonene after application to the underarm.

23. The Deodorant contains solvent irritants such as cyclohexanone derivative (2-(1-methylpropyl)-), and phenethyl alcohol.

4

24. The Deodorant contains penetration enhancers that increase skin absorption, including Propylene glycol, PPG-3 Myristyl Ether, Poloxamine 1307, and Tetrasodium EDTA.

25. The Deodorant does not contain commercially available soothing agents that would reduce the risk of contact dermatitis such as allantoin, bisabolol,

26. The advertised "EverFresh Boost" is likely a concentration of ingredients at higher concentrations than found in other brands.

27. Stronger fragrances mean higher concentrations of oxidizable, lipophilic chemicals that can penetrate deeper, oxidize faster, and persist longer.

28. PPG-3 myristyl ether and phenethyl alcohol are solvents that enhance transdermal penetration and may cause chemical irritation.

29. The inclusion of poloxamine 1307 and tetrasodium EDTA can increase permeability of the stratum corneum, further compounding risk.

30. The risk posed by Old Spice deodorants is unique and the prevalence of chemical burns is not found in other brands.

31. The Deodorant was unreasonably dangerous, in part, because of the combination of oxidized terpenes, solvents, and penetration enhancers.

32. Deodorant works differently than anti-perspirant in that it is highly alkaline.

33. The Deodorant has a PH of 9 according to defendants' published Safety Data Sheet.

5

34. The PH of applied deodorant increases as it evaporates and becomes more concentrated and alkaline on the skin's surface.

35. This high PH environment breaks down the skin's natural acidic barriers and can cause increased permeability of the skin membrane further exacerbating the danger posed by the Deodorant's chemical composition.

36. Plaintiff used the Deodorant on two or three occasions on successive days beginning approximately June 26 or 27, 2023.

37. As a proximate result, plaintiff developed severe open burns under his arms and discoloration that persisted until early December 2023.

38. Plaintiff has used other deodorant products for decades without issue.

### Count I – Strict Product Liability
### (Design Defect, Manufacture Defect and Failure to Warn)

39. Plaintiff repeats and realleges the previous allegations as if fully set forth herein.

40. Defendants designed, manufactured, distributed, and sold the Deodorant that contained a combination of chemical compounds, including but not limited to: *propylene glycol, PPG-3 myristyl ether, phenethyl alcohol, linalool, ethyl linalool, limonene, geraniol, isoeugenol, hydroxycitronellal, hexyl cinnamal, lavender oil (Lavandula angustifolia), cyclohexanone derivative, and poloxamine 1307.*

41. Plaintiff used the Deodorant as directed under typical and foreseeable conditions – namely, applied to the underarm area during the course of prolonged travel in which the skin was unshaved but occluded, consistent with normal deodorant use.

6

42. Within hours of first use, plaintiff developed a severe chemical burn or contact dermatitis, including redness, blistering, peeling, rawness, and substantial pain. Plaintiff sought and received medical care, and was diagnosed with chemical irritant contact dermatitis.

43. The Deodorant was unreasonably dangerous to the average consumer who would have no reason to suspect that ingredients which were unstated on the label could combine to create substantial dermatitis risk.

44. Deodorant does not typically cause severe chemical burns.

45. Defendants had unequal access to information through the design of the deodorant and formulation of complex chemical compounds.

46. As manufacturers, defendants had a duty to warn and instruct the consumer/user about the dangers of its product of which it knew, or in the exercise of ordinary care, should have known, at the time the product left the manufacturer's/other's control.

47. Defendants failed to warn consumers of the known risks of chemical burns.

48. Defendants failed to warn consumers that immediately washing off the Deodorant and applying moisturizing gel or other first aid could mitigate the severity of injury suffered because admitting that the problem exists would hamper profits.

49. The Deodorant is unreasonably dangerous because it is poorly designed. The Deodorant contains multiple ingredients that amplify risk of harm.

7

50. The Deodorant is unreasonably dangerous based on manufacturing defect that resulted in unsafe levels of danger causing ingredients.

51. On information and belief, the Deodorant has a PH of more than 9.

52. On information and belief, the Deodorant's ingredients oxidized prior to leaving defendants' control.

53. The warning was inadequate because it fails to inform consumers of the reason for the warning and fail to specify the risk presented by the product.

54. Plaintiff's reaction to the product was not idiosyncratic as defendant has received thousands of complaints and litigated the issues presented by this case in nationwide litigation years before it sold the Deodorant.

55. The inadequate warning, dangerous design, and/or design defects were all a proximate cause of plaintiff's injury.

WHEREFORE, plaintiff prays this Honorable Court enter judgment against the Procter and Gamble Company, Procter & Gamble Distributing LLC, The Procter and & Gamble Manufacturing Company, and the Procter & Gamble U.S. Business Services Company in an amount in excess of $50,000 plus prejudgment interest and costs as provided by statute.

### Count II – Strict Product Liability
### (Distributor Liability)

56. Plaintiff repeats all previous allegations as if fully set forth herein.

57. The Deodorant was unreasonably dangerous at the time it left the control of Arzuq and Amazon.

8

58. Alternatively, Arzuq and/or Amazon created or contributed to the Deodorant's danger by improperly storing, transporting, or distributing the product in violation of P&G's directives or instructions.

WHEREFORE, plaintiff prays this Honorable Court enter judgment against Arzuq Distributors Inc. and/or Amazon.com Inc. in an amount in excess of $50,000 plus prejudgment interest and costs as provided by statute.

### Count III – Negligence

59. Plaintiff repeats all previous allegations as if fully set forth herein.

60. At all relevant times, defendants owed a duty to consumers, including plaintiff, to use reasonable care in the design, formulation, testing, labeling, and marketing of its deodorant products.

61. Defendants knew or should have known, based on published toxicological and dermatological research that the Deodorant's ingredients are known to oxidize or react with skin to cause irritation and burns.

62. Defendants knew or should have known that the combination of irritants, sensitizers, solvents, and penetration enhancers in the Product posed a significant risk of causing chemical burns, particularly in the underarm area under conditions of sweat, friction, or occlusion.

63. Defendants individually and through their agents and each of them, breached their duty of care by:

    a. Including multiple ingredients with synergistic allergenic risks;

    b. Including ingredients that break down natural skin barrier;

9

FILED DATE: 6/24/2025 2:53 PM   2025L008063

    c.    Including multiple ingredients known to cause skin irritation or sensitization;

    d.    Failure to adequately test the Deodorant under foreseeable conditions of use, such as prolonged travel days;

    e.    Failed to adequately investigate prior well-publicized incidents similar to plaintiff's across many of its product lines;

    f.    Failed to correct identified causes of consumer harm despite alternative ingredients being commercially available;

    g.    Failed to include warnings or instructions that would have mitigated or prevented foreseeable harm; and

    h.    Failed to substitute safer alternative ingredients or formulations despite the availability of such alternatives.

64. As a direct and proximate cause of defendants' negligence, plaintiff suffered severe injury, including chemical burns, pain and suffering, loss of normal life enjoyment, emotional distress, disfigurement, embarrassment, and medical bills endeavoring to be cured from his injuries.

WHEREFORE, plaintiff prays this Honorable Court enter judgment against the Procter and Gamble Company, Procter & Gamble Distributing LLC, The Procter and & Gamble Manufacturing Company, and the Procter & Gamble U.S. Business Services Company in an amount in excess of $50,000 plus prejudgment interest and costs as provided by statute.

**Count IV – Consumer Fraud and Deceptive Business Practices Act**

65. Plaintiff repeats and realleges all previous allegations as if fully set forth herein.

10

66. Plaintiff brings this cause of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 *et. seq.* ("Act").

67. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission (815 ILCS 505/2).

68. Defendants committed a deceptive and unfair act and practice in violation of the Act in failing to warn that many consumers had previously suffered severe chemical burns and/or reactions using their deodorants.

69. Defendants violated the Act by omitting the material fact concerning the dangers associated with the its Deodorant, including the facts that it contained:

   a. Known skin irritants and penetration enhancers that significantly increased the risk of chemical burns;

   b. Oxidizable fragrance ingredients that convert to potent allergens upon exposure to air; and

   c. Ingredients likely to cause irritant contact dermatitis under foreseeable conditions such as long travel days.

70. Defendants advertised the Deodorant as "Aluminum Free" with white packaging that deceptively implied that the product was natural or that aluminum was the cause of irritation when in reality the lavender oil and synthetic fragrance compounds were significantly more dangerous to consumers.

71. Defendants' labeling and marketing materials failed to warn consumers of these risks and instead presented the Deodorant in a manner that

11

implied that it was safe and suitable for daily use, including during travel and physical activity.

72. Defendants' omissions and deceptions were made with the intent that consumers rely on the safety and adequacy of the product as marketed.

73. Plaintiff relied upon the omissions and deceptions in choosing to use the product.

74. Plaintiff further relied upon the omissions and deceptions in simply discontinuing use instead of immediately seeking medical treatment that could have reduced the severity of his injury.

75. As a proximate cause of defendants' violations of the Act, plaintiff suffered pecuniary injury in purchasing over the counter products to relieve his symptoms. Moreover, plaintiff suffered pain and suffering, loss of normal life enjoyment, emotional distress, and medical bills that are compensable under the Act.

76. Defendants are liable for punitive damages for their violations of the Act. Substantial punitive damages are warranted because defendants intentionally chose to hide safety information so that the profitability of their products would remain unimpeded.

WHEREFORE, plaintiff prays this Honorable Court enter judgment against the Procter and Gamble Company, Procter & Gamble Distributing LLC, The Procter and & Gamble Manufacturing Company, and the Procter & Gamble U.S. Business

FILED DATE: 6/24/2025 2:53 PM    2025L008063

Services Company in an amount in excess of $50,000 plus prejudgment interest, attorney fees and costs as provided by statute.

                                                            Respectfully submitted,

                                                            */s/ Nicholas Nepustil*
                                                            Nicholas Nepustil
                                                           Attorney for Plaintiff

03013
BENJAMIN AND SHAPIRO, LTD.
180 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
Tel: (312) 641-5944
Fax: (312) 641-3370
*pleadings@benshaplaw.com*

FILED
6/24/2025 2:53 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L008063
Calendar, R

03013    NN/slp
*pleadings@benshaplaw.com*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JOSHUA CHURCHIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2025L008063 |
| | ) |
| THE PROCTER AND GAMBLE COMPANY | ) |
| d/b/a OLD SPICE, PROCTER & GAMBLE | ) |
| DISTRIBUTING LLC, THE PROCTER & | ) |
| GAMBLE MANUFACTURING COMPANY, | ) |
| THE PROCTER & GAMBLE U.S. | ) |
| BUSINESS SERVICES COMPANY, | ) |
| ARZUQ DISTRIBUTORS INC., and | ) |
| AMAZON.COM INC., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT

The undersigned, one of the Attorneys for the Plaintiff herein, states that this is a civil action seeking money damages in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes that same to be true.

                                                          */s/ Nicholas Nepustil*
                                                          Nicholas Nepustil
                                                          Attorney for Plaintiff

03013 / *pleadings@benshaplaw.com*
BENJAMIN AND SHAPIRO, LTD.
180 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
Tel: (312) 641-5944 / Fax: (312) 641-3370

Civil Action Cover Sheet - Case Initiation (12/01/24) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

Joshua Churchia,

v.

The Procter and Gamble Company d/b/a Old Spice, et al.

No. 2025L008063

FILED
6/24/2025 2:53 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L008063
Calendar, R

FILED DATE: 6/24/2025 2:53 PM   2025L008063

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand  ❑ Yes  ■ No

(FILE STAMP)

**PERSONAL INJURY/WRONGFUL DEATH**
CASE TYPES:
- ❑ 027  Motor Vehicle
- ❑ 040  Medical Malpractice
- ❑ 047  Asbestos
- ❑ 048  Dram Shop
- ■ 049  Product Liability
- ❑ 051  Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ❑ 052  Railroad/FELA
- ❑ 053  Pediatric Lead Exposure
- ❑ 061  Other Personal Injury/Wrongful Death
- ❑ 063  Intentional Tort
- ❑ 064  Miscellaneous Statutory Action
  (Please Specify Below**)
- ❑ 065  Premises Liability
- ❑ 078  Fen-phen/Redux Litigation
- ❑ 199  Silicone Implant

**TAX & MISCELLANEOUS REMEDIES**
CASE TYPES:
- ❑ 007  Confessions of Judgment
- ❑ 008  Replevin
- ❑ 009  Tax
- ❑ 015  Condemnation
- ❑ 017  Detinue
- ❑ 029  Unemployment Compensation
- ❑ 031  Foreign Transcript
- ❑ 036  Administrative Review Action
- ❑ 085  Petition to Register Foreign Judgment
- ❑ 099  All Other Extraordinary Remedies

**COMMERCIAL LITIGATION**
CASE TYPES:
- ❑ 002  Breach of Contract
- ❑ 070  Professional Malpractice
  (other than legal or medical)
- ❑ 071  Fraud (other than legal or medical)
- ❑ 072  Consumer Fraud
- ❑ 073  Breach of Warranty
- ❑ 074  Statutory Action
  (Please specify below.**)
- ❑ 075  Other Commercial Litigation
  (Please specify below.**)
- ❑ 076  Retaliatory Discharge

**OTHER ACTIONS**
CASE TYPES:
- ❑ 062  Property Damage
- ❑ 066  Legal Malpractice
- ❑ 077  Libel/Slander
- ❑ 079  Petition for Qualified Orders
- ❑ 084  Petition to Issue Subpoena
- ❑ 100  Petition for Discovery

** _____

Primary Email: pleadings@benshaplaw.com

Secondary Email: nnepustil@benshaplaw.com

Tertiary Email: spavlat@benshaplaw.com

By: Nicholas Nepustil
(Attorney)                    (Pro Se)

**Pro Se Only:** ❑ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

**Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, Illinois**

Page 1 of 1